MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
Samson C. Huang, Bar No. 273785
samson.huang@morganlewis.com
Eva M. Nofri, Bar No. 347894
eva.nofri@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:  +1.213.612.2500
Fax:  +1.213.612.2501

Attorneys for Defendant
EQUINOX HOLDINGS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CAMILO FIGUEREDO, an individual, and KAROLY MAYER, an individual on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>EQUINOX HOLDINGS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 2:24-cv-08977<br><br>**DEFENDANT EQUINOX HOLDINGS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Equinox Holdings, Inc. ("Defendant" or "Equinox"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. This removal is based on the following grounds:

## I.   PROCEDURAL BACKGROUND

1.   On  September 9, 2024, Plaintiffs Juan Camilo Figueredo and Karoly Mayer ("Plaintiffs") filed an unverified putative class action complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Juan Camilo Figueredo, an individual, and Karoly Mayer, an individual on behalf of themselves and other similarly situated v. Equinox Holdings, Inc.*; and DOES 1 through 50, inclusive, Case No. 24STCV23259 (the "Complaint").

2.   On  September 17, 2024, Plaintiff served copies of the Summons, Complaint, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Notice of Case Assignment, and Alternative Dispute Resolution Packet on the registered agent for Equinox. The Summons and Complaint are attached hereto as **Exhibit 1**. True and correct copies of the other documents are attached hereto as **Exhibit 2**.

3.   On or about September 26, 2024, Plaintiff served counsel for Equinox with Notice and copies of the Notice of Posting Jury Fees, Initial Status Conference Order (Complex Cases/Class Actions) and Order Re: Complex Designation. True and correct copies of the Notice and other documents are attached hereto as **Exhibit 3**. Exhibits 1 through 3 constitute all the pleadings, process, and orders served upon Equinox in the Superior Court action.

4.   Plaintiffs allege that they were employed by Equinox as non-exempt "personal trainers" with job duties "that included making session sales, scheduling

and training clients, working floor shirts, organizing weights, and helping customers and providing them with various fitness related services." Ex. 1, Compl. ¶¶ 2, 4-5. The Complaint defines "Defendants" as Equinox and unnamed "Doe" defendants. *Id*. ¶ 6. Plaintiffs bring this action on behalf of themselves and "all current and former Employees within the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as Personal Trainers and in similar and related positions" by Equinox. *Id*. ¶ 1. The Complaint alleges that violations alleged by Plaintiff were "experienced by all other Employees working as personal trainers as well as those employed by Defendants as reception workers, cleaners, and others in similar positions based out of [Equinox's] locations throughout California. *Id*. ¶¶ 2.

5.      Plaintiffs additionally seek to certify the following putative subclasses, as defined in the Complaint:

**Minimum Wages Subclass**: All Class Members who were not compensated for all hours worked for Defendants at the applicable minimum wage.

**Wages and Overtime Subclass**: All Class Members who were not compensated for all hours worked for Defendants at the required rates of pay, including for all hours worked in excess of eight in a day and/or forty in a week.

**Meal Period Subclass**: All Class Members who were subject to Defendants' policy and/or practice of ailing to provide unpaid 30-minute uninterrupted and duty-free meal periods or one hour of pay at the Employee's regular rate of pay in lieu thereof.

**Wage Statement Subclass**: All Class Members who, within the applicable limitations period, were not provided with accurate itemized wage statements.

**Piece Rate Subclass**: All Class members who were compensated on a

piece rate basis but were not provided accurate records of time worked and pieces earned or were not paid at their required rates for all non-productive time and all non-productive rest and recovery time.

**Unauthorized Deductions from Wages Subclass**: All Class Members who were subject to Defendants' policy and/or practice of automatically deducting 30-minutes [sic] worth of wages from Employees for alleged meal periods they were denied and/or by understating the hours worked by Employees.

**Expense Reimbursement Subclass**: All Class Members who incurred necessary and reasonable expenses in connection with performing their job duties for Defendants and who were subject to a policy and/or practice under which such expenses were not reimbursed.

**Termination Pay Subclass**: All Class Members who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were subject to Defendants' policy and/or practice of failing to timely pay wages upon termination.

**Payroll Records Subclass**: All Class [M]embers who were subject to Defendants' policy and/or practice of failing to keep accurate time and wage records as required by California wage-and-hour laws.

**Labor Code § 2751 Subclass**: All Class Members[ ] who were paid a commission on the sales they made of Defendants' services, but who were not provided with a written agreement, setting forth the method by which the commissions were calculated and paid.

**Failure to Timely Pay Wages Twice Monthly Subclass**: All Class Members who were subject to Defendants' policy and practice of not timely paying all wages earned when they were due and payable at least twice monthly.

**UCL Subclass**: All Class Members who are owed restitution as a result

of Defendants' business acts and practices, to the extent such acts and practices are found to be unlawful, deceptive, and/or unfair. Ex. 1, Compl. ¶ 45(a)-(m).

6. The Complaint seeks individual and class damages based on the following alleged claims: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to provide accurate wage statements, (6) failure to properly compensate employees paid by piece rate, (7) unlawful deduction of wages, (8) failure to pay all wages due upon separation, (9) failure to pay wages timely during employment, (10) failure to maintain accurate payroll records, (11) failure to reimburse business expenses, and (12) violation of the Unfair Competition Law ("UCL").

7. Based on Plaintiffs' allegations in the Complaint, which Equinox denies, Equinox calculates the amount in controversy for just the Eighth Cause of Action seeking waiting time penalties for alleged violations of Labor Code § 203, and Fifth Cause of Action for statutory penalties for alleged violations of Labor Code § 226(a), as set forth below.

## II.   REMOVAL IS TIMELY

8. Equinox was served with the Summons and Complaint on September 17, 2024. Because this Notice of Removal is filed within thirty days of service of the Complaint, it is timely under 28 U.S.C. §§ 1446(b)(1) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court.

## III.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

9. Plaintiffs bring this action as a putative class action under California Code Civ. Proc. § 382. Ex. 1, Compl. ¶ 11. Removal based upon the Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C.

§§ 1332(d), 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendant, (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Equinox denies Plaintiffs' factual allegations and denies that Plaintiffs—or the class they purport to represent—are entitled to the relief requested, based on the allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

**A. Equinox Is Not a California Citizen and Minimal Diversity of Citizenship Exists**

10. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

11. For purposes of diversity of citizenship jurisdiction, the citizenship of an individual is determined by their domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994); *Francisco v. Emeritus*

*Corp.*, No. CV1702871BROSSX, 2017 WL 2541401, at *4 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California."); *Zavala v. Deutsche Bank Tr. Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima facie' evidence of domicile.").

12.    The Complaint alleges that Equinox employed putative class members "within the State of California," that Equinox employed Plaintiffs in Los Angeles County, and that Plaintiffs have resided in Los Angeles County "during the time period relevant" to the Complaint. Ex. 1, Compl. ¶¶ 1-5. The Complaint does not allege that Plaintiffs are citizens of any other state. Accordingly, Plaintiffs (as well as other putative class members) are citizens of California for diversity jurisdiction purposes.

13.    Under CAFA, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Equinox is, and ever since this action commenced has been, a corporation incorporated in the State of Delaware with its principal place of business in New York, New York.

14.    The "principal place of business" of a corporation is its "nerve center" or "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n practice, it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings …." *Id*. at 93.

15.    Equinox's principal place of business and headquarters is located at 31 Hudson Yards, New York, New York 10001, where its executive corporate officers are based and where they direct the company's business. Equinox's primary

executive, administrative, financial, policymaking, and management functions are performed in New York.

16.    Equinox is, and was at the time that Plaintiffs filed this action, a citizen of New York and Delaware for diversity purposes under CAFA. 28 U.S.C. § 1332(d)(10). Therefore, based on the Complaint, Plaintiffs are citizens of a state different than Equinox. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity," meaning "any member of a class of plaintiffs is a citizen of a State different from any Defendant"); *Bradford v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[Defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

**B.    The Putative Class Has More Than 100 Members**

17.    Plaintiffs brings their class action on behalf of California employees of Equinox who have worked as hourly non-exempt employees during the period beginning four years before the Complaint was filed (i.e., September 9, 2020). Ex. 1, Compl. ¶¶ 1, 44. Based on available data, Equinox is informed and believes that there are over 5,000 hourly non-exempt employees who were employed by Equinox in California as personal trainers and other "similar and related positions," as alleged in Paragraphs 1 and 2 of the Complaint, between September 9, 2020, and September 9, 2024. Therefore, the number of putative class members exceeds the 100 required under CAFA.

**C.    The Amount in Controversy Exceeds Five Million Dollars[1]**

18.    Pursuant to CAFA, the claims of the individual members in a class

---

[1] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' Complaint. Defendant's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiffs' claims are without merit and that it is not liable to Plaintiffs or any putative class member. Defendant expressly denies that Plaintiffs or any putative class member is entitled to recover any of the penalties sought in the Complaint or that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an

action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of class damages, Defendant need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases).

19. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted); *see also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed; "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

---

admission of liability or a suggestion that Plaintiffs will or could certify any class or actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8                    DEFENDANT'S NOTICE OF REMOVAL

20.    Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[A] removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations and citation omitted). A removing defendant can rely on " 'a chain of reasoning that includes assumptions' " that are reasonable and "an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *3 (C.D. Cal. Jan. 14, 2021). As detailed below, Equinox plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiffs' Eighth Cause of Action alone, and further exceeds that amount based on the Fifth Cause of Action, such that the Court has jurisdiction pursuant to CAFA. 28 U.S.C. § 1332(d)(2).

21.    Although Equinox denies Plaintiffs' factual allegations and denies that they or the classes they seek to represent are entitled to the relief for which they has prayed, Plaintiffs' allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

       1.    *Plaintiffs' Eighth Cause of Action Seeking Waiting Time Penalties Puts at Least $5,898,672 in Controversy*

22.    Plaintiffs' eighth cause of action for violation of Labor Code § 203 seeks to recover waiting time penalties under Labor Code § 203 on behalf of a "Termination Pay Subclass" comprising of "[a]ll Class Members who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were subject to Defendants' policy and/or practice of failing to

timely pay wages upon termination." Ex. 1, Compl. ¶ 45(i).

23. The Complaint alleges that Equinox "systematically failed to pay Plaintiffs and Class Members all minimum wages, overtime wages, and double wages to which they were entitled," by failing to pay all piece rate compensation earned, failing to pay for all non-productive time, failing to include all of remuneration in the regular rate used to calculate overtime, failing to pay premium wages for unprovided meal and rest periods, requiring off-the-clock work, and "rounding and/or altering" time records. Ex. 1, Compl. ¶¶ 13, 17, 123. The Complaint further alleges that these failures are the result of "systematic policies and practices of failing to correctly record all time worked and compensate Employees at the correct rates and for all hours worked" and that Equinox followed a "uniform and consistent policy of failing to pay all wages owed to Plaintiffs and other similarly situated Employees" upon termination of employment. *Id*. ¶¶ 18, 40.

24. The Complaint alleges that the wages due but not paid to employees who are no longer employed by Equinox "remained due and owing for more than thirty (30) days from the date of separation from employment," and seeks to recover "penalties pursuant to Labor Code § 203 for all Employees who quit or were fired in an amount equal to their daily wages times thirty (30) days, as may be proven." *Id*. ¶ 122, Prayer for Relief ¶ 11. Accordingly, Plaintiffs seek to recover the maximum amount of waiting time penalties for each putative class member whose employment terminated during the alleged liability period.

25. The statute of limitations on Plaintiffs' Labor Code § 203 claim for waiting time penalties is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395 (2010). Equinox's review of personnel data shows that between September 9, 2021, and September 9, 2024 (the three-year period prior to Plaintiffs filing this action), at least 2,392 non-exempt California employees are identified as having been formerly employed as "personal trainers" or in "similar and related positions" based on Equinox's understanding of the Complaint's allegations and description of

the job duties performed by the putative class members Plaintiffs seek to represent. The average final hourly rate of pay for these former employees was approximately $16.44.

26. Based on the broad and sweeping allegations in the Complaint, Equinox may reasonably assume a 100% violation rate for such former employees as to the alleged waiting time penalties to calculate the amount in controversy. *See Barzi v. Equinox Holdings, Inc.*, 2024 WL 4133020, at \*5 (C.D. Cal. Sept. 9, 2024) ("[T]o support a 100% violation rate, Defendant need only persuade the Court that it is more likely than not that each member of the putative class has a claim for at least one theory of liability raised in the Complaint."); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at \*2 (C.D. Cal. Nov. 1, 2018) (holding that plaintiffs' "allegations of unpaid wages, are implicit allegations of maximum damages for waiting time penalties"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid.").

27. The Complaint alleges that "Plaintiffs and Class Members were non-exempt employees required to perform work as ordered by Defendants for more than five (5) hours during a shift …." Ex. 1, Compl. ¶30. Based on Plaintiffs' allegations, for purposes of estimating the amount in controversy, Equinox conservatively assumes that putative class members whose employment ended during the above period worked shifts on average of approximately five hours per shift. Assuming maximum waiting time penalties, as sought in the Complaint, and a final daily rate of five hours times the approximate average of each such former employee's final hourly rate of pay, Plaintiffs' Labor Code § 203 waiting time penalties claim puts in controversy at least **$5,898,672** (2,392 former employees x $16.44 x 5 hours x 30 days). Accordingly, CAFA's $5 million threshold is satisfied based on Plaintiffs' eighth cause of action alone.

2.      *Plaintiffs' Fifth Cause of Action Seeking Statutory Penalties for Wage Statement Violations Puts at Least Another $5,122,450 in Controversy*

28.  Plaintiffs' fifth cause of action seeks to recover statutory penalties for violations of Labor Code § 226(a) on behalf of a "Wage Statement Subclass" comprising of "[a]ll Class Members who, within the applicable limitations period, were not provided with accurate itemized wage statements. Ex. 1, Compl. ¶¶ 45.e.

29.      The Complaint alleges that "[f]rom at least four (4) years prior to the filing of this lawsuit, and continuing to the present, [Equinox has] … consistently failed to provide Employees with timely, accurate, and itemized wage statements. Ex. 1, Compl. ¶ 39. Specifically, the Complaint alleges Equinox failed to provide accurate wage statements that "accurately account for wages, overtime, and premium pay, including for all overtime hours worked and for deficient meal periods and rest breaks, … [and] failed to accurately list all piece rates and piece rate units on the wage statements it issued[.]" *Id*. ¶ 101. The Complaint further alleges that the wage statements Equinox issued to Plaintiffs and putative class members "systematically and uniformly violated California Labor Code § 226." *Id*. ¶ 39.

30.      Based on the allegations int the Complaint, it is reasonable to assume for removal purposes a 100% violation rate on Plaintiffs' wage statement claim. *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) ("The allegations here directly support Defendants' use of a 100% violation rate, given that Plaintiff alleges that all employees received defective statements."); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the class period could potentially have been noncompliant.").

31.      Labor Code section 226(e)(1) provides penalties of $50 for "initial" failures and $100 for all "subsequent" failures to provide the information required

by the statute, and the Complaint alleges Plaintiffs and putative class members are "entitled to recover" penalties in those amounts. Ex. 1, Compl. ¶ 108. The statute of limitations on wage statement penalty claims is one year. Code Civ. P. § 340(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1120 (2007). Equinox's review of data shows that during the relevant one-year statute of limitations period, it provided wage statements to putative class members on a biweekly basis. Since September 9, 2023, which is one year prior to the filing of the Complaint, Equinox issued at least 52,663 wage statements to 2,877 putative class members. Assigning $50 for each employee's initial wage statement and $100 for each employee's subsequent wage statement in the limitations period (none of these employees are subject to the $4,000 cap at this time), Equinox calculates that Plaintiffs' wage statement claim puts in controversy at least another **$5,122,450**.

> 3.      *Plaintiffs' Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold*

32.     Plaintiffs seek to recover attorney's fees pursuant to Labor Code §§ 210, 218.5, 226(e), 1194(a), and 2802(c). Compl. ¶¶ 66, 74, 77, 85, 108, 130, 142. When an award is authorized by statute, "prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy").

33.     Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Bartholomew v. Goodman Manufacturing Co., L.P.*, 2022 WL 4355147, at *7-8 (E.D. Cal. Sept. 20, 2022) (recognizing the 25% benchmark for attorneys' fees in class action cases and declining to disregard the defendants' attorneys' fees estimate in light of *Jauregui*); *Evers v. La-Z-Boy Inc.*, 2022 WL 2966301, at *10-11

(S.D. Cal. July 27, 2022) (accepting as reasonable estimate of attorneys' fees using 25% benchmark); *Anderson v. Starbucks Corp.*, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020).

34.     Although Equinox denies Plaintiffs' claim for attorney's fees, inclusion of potential future attorney's fees for purposes of removal by calculating 25% of the amount in controversy for claims for which Plaintiffs seek fees, as set forth above, would further increase the amount in controversy. Here, at a minimum Plaintiffs seek attorney's fees for their claim for wage statement penalties under Labor Code § 226(e). As such, 25% of $5,122,450 would add another $1,280,612.50 to the amount in controversy, just as to the wage statement claim, bringing the total amount in controversy to at least **$12,301,734.50**.

35.     Therefore, although Equinox has plausibly alleged that the amount in controversy without attorney's fees exceeds $5,000,000, the inclusion of future attorney's fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

        *4.     Plaintiffs' Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold*

36.  As shown above, using conservative and reasonable assumptions grounded in the allegations of the Complaint to calculate the amount in controversy, Defendant has demonstrated that Plaintiffs' claims for waiting time penalties and wage statement penalties, as well as their request for attorney's fees as to the latter claim, place more than **$12,301,734.50** in controversy. However, in addition to this amount, Plaintiffs' other ten causes of action place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold.

## IV.   VENUE

37.     This action was originally filed in the California Superior Court for the County of Los Angeles. Initial venue is therefore proper in this district, pursuant to

28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V.   NOTICE

38.   Equinox will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI.   CONCLUSION

39.   Based on the foregoing, Equinox removes this action to this Court. If any question arises as to the propriety of the removal of this action, Equinox requests the opportunity to present evidence and argument in support of its position that this case is properly removable.

Dated: October 17, 2024                    MORGAN, LEWIS & BOCKIUS LLP


By   */s/ John S. Battenfeld*
     John S. Battenfeld
     Samson C. Huang
     Eva M. Nofri

     Attorneys for Defendant
     EQUINOX HOLDINGS, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15          DEFENDANT'S NOTICE OF REMOVAL